The National Bank of the Republic of Chicago, Complainant, v. Wells-Jackson Corporation et al., Defendants.

George A. McKinlock, Cross Complainant, Appellee, v. The Phillips Company, Cross Defendant, Appellant.

Gen. No. 36,759.

Opinion filed December 11, 1933. Rehearing denied and opinion slightly modified December 27, 1933.

ALTHEIMER, MAYER, WOODS & SMITH, for appellant; WALTER B. SMITH and WILLIAM F. STRUCKMANN, of counsel.

DEFREES, BUCKINGHAM, JONES & HOFFMAN, for appellee; DON KENNETH JONES, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

On September 11, 1930, the National Bank of the Republic, as trustee, filed its bill to foreclose a trust deed given by the Wells-Jackson Corporation to secure an issue of bonds of the aggregate amount of $540,000. The trust deed purported to convey a "certain leasehold estate" which was created by a lease executed by George A. McKinlock, as lessor, to Noel E. Durand and Frederick C. Foltz, as lessees, dated November 10, 1928. The lease was for the term of 99 years and demised certain premises therein described.

On November 20, 1928, the lessees assigned this 99-year lease to the Wells-Jackson corporation. The bill to foreclose contained the usual allegations as to defaults, etc., and prayed for a foreclosure and for general relief.

By amendment to the bill filed October 24, 1930, certain unknown owners of bonds secured by another trust deed were made defendants as were B. E. Phillips and E. J. Phillips, copartners doing business as Phillips & Co., and Roscoe Overall Laundry & Supply Co.

On December 14, 1931, George A. McKinlock filed his cross-bill setting up the prior proceedings in the cause, and averring that on November 10, 1928, he was the owner in fee simple of the premises described and since that time continuously has been such owner; that prior to the execution of the trust deed, for which foreclosure is prayed, he made a 99-year lease of the premises to Durand and Foltz, the term beginning January 1,

1929, and ending December 1, 2027; that the lease was delivered and recorded; that Durand and Foltz on November 30, 1928, by a writing of that date assigned the same to the Wells-Jackson Corporation, which assumed all the terms and conditions of the lease; that McKinlock assented to the assignment upon the conditions named; that on January 1, 1929, Wells-Jackson Corporation executed the trust deed described in the bill of complaint; that Wells-Jackson Corporation, Durand and Foltz have all defaulted in the payment of rent provided by the lease; that he, McKinlock, served notice that if these defaults continued 60 days he would end the term and take possession of the premises; that the taxes for 1929 were unpaid, and that on June 30, 1931, he declared a forfeiture and demanded possession as provided for by the lease; that the declaration of forfeiture was duly served on July 1, 1931, upon the lessees, the corporation, and the trustees (including complainant) under the two trust deeds; that the Chicago Title & Trust Co. was appointed receiver in the original foreclosure proceeding; that by reason of these defaults all the defendants who claim an interest or right in the premises hold such right or interest, if any, subject to the rights of McKinlock; that on July 14, 1931, McKinlock filed an intervening petition setting up the foregoing facts and praying that he be decreed to be entitled to immediate possession; that all defendants and persons claiming through them in possession of the real estate should be directed to deliver possession to him; that the parties were ruled to answer, and that on October 3, 1931, a decree was entered adjudging that the declaration of forfeiture of the 99-year lease was valid and binding, subject to any rights which the National Bank of the Republic of Chicago, as trustee, and other parties in interest might possess; that any other parties to the cause or persons claiming under them who might be in posses-

sion be directed to deliver possession to McKinlock on October 31, 1931; that pursuant to said decree the premises were on October 31, 1931, delivered up to McKinlock, who is now in possession.

The cross-bill further alleges that the lease, assignment and trust deeds are clouds on McKinlock's title to the real estate, building and improvements; that Phillips & Co. and certain other parties named have or claim some right, title, interest or lien in the real estate and buildings, and that such lien, if any, has ceased and determined. The cross-bill prayed that the lease, the assignment, the two trust deeds and the interest of these other persons be set aside and declared void as a cloud on McKinlock's title, and that McKinlock be decreed to be vested with a fee simple title to the real estate, building and improvements, free and clear of the lease, the mortgage trust deeds and all liens upon or attaching to the leasehold estate.

The Phillips Co. answered that it claimed an interest in the premises; that on August 19, 1929, its predecessors, Phillips & Co., then a partnership, entered into a contract of lease with Wells-Jackson Corporation, as lessees, whereby Phillips & Co. agreed to install and lease for five years within its completion and approval a system of automatic fire sprinklers in the property of the leasehold estate described as 316–326 South Wells street, Chicago, Illinois; that the lessee agreed to pay lessors and their assigns an aggregate rental of $45,950, payable annually in advance at the rate of $9,190 annually, with interest at seven per cent; that it was mutually agreed in the contract that the system should not become a fixture but should be and remain personal property, and that the title and right of possession thereto, subject to the terms of the contract, should remain in the lessors, and that if default be made of the payments or other provisions of the lease, the lessors, or their assigns, might resume possession of the system, which the lessee agreed to de-

liver to them on demand, whether attached to the realty or not, and that the lessors of the system should have the right to enter the premises for the purpose of removing the system, provided, however, that upon full payment of the rental, lessors would then sell and deliver to the lessee the sprinkler equipment absolutely.

The answer further averred that on August 19, 1929, Phillips & Co. assigned to the Phillips Co. the lease or contract and all rights thereunder; that about the time of the execution of the lease between McKinlock as lessor and Durand and Foltz as lessees, the Wells-Jackson Corporation was organized, to which the lease and leasehold estate were assigned, as alleged in the cross-bill; that pursuant to said lease a large brick and concrete building was constructed upon the demised premises; that in the plans for the building the lessees and their assigns caused to be incorporated an adequate sprinkler system of proper fire protection; that the plans were known to and examined and approved by McKinlock, and that the fire protection system was the system contracted for between Phillips & Co. and the Wells-Jackson Corporation under the Phillips lease; that pursuant to the Phillips lease, the Phillips Co. caused to be installed in said building the fire protection sprinkler system in accordance with the plans, specifications and contract; that the same, upon completion, has remained in the building and has at all times been maintained in good and operative condition; that the instalment thereof was approved by McKinlock; that the Wells-Jackson Corporation has made default in the payment of the instalment of rentals accruing under the Phillips lease on September 10, 1930, and in payments which thereafter have become due by reason of which the Phillips Co. has elected to declare and has declared the sprinkler system instalment to be the property of the Phillips Co., and has demanded from McKinlock that he turn over to the

Phillips Co. the sprinkler system, which he has neglected and refused to do; that about November 1, 1931, McKinlock took possession of the premises and building and the sprinkler system and has continuously since that time been operating the building as a public garage; that the building has a capacity of upwards of 400 automobiles and has many automobiles continuously stored therein; that McKinlock has knowingly and wrongfully used the system and converted the same to his own use, and that the title thereto and the right to exclusive use and benefit thereof remains in the Phillips Co.

The answer prayed that as a condition to the entry of a decree as prayed by McKinlock, he be required, as a condition precedent thereto, to pay Phillips Co. the full amount of rental due to it under the Phillips lease, with interest.

The cause was heard by the chancellor in open court, and a decree was entered finding jurisdictional facts—that McKinlock, cross complainant, had proceeded according to the statute, that the equities were with him, that the material allegations had been proven and were true, and these were in substance set forth.

The decree further found that the sprinkler system was an integral part of the real estate; that the erection and instalment of it were required by the plans and specifications for the construction of the building; that the building was constructed as a public garage and was required to be a first-class modern fireproof building, erected and constructed in accordance with the laws and ordinances of the City of Chicago, by which the sprinkler system was required to be erected, installed and maintained therein at all times, otherwise the operation of the building as a garage was forbidden and prohibited by the ordinances; that the persons who contracted to install the sprinkler system had notice of the 99-year lease and the terms thereof and of the plans and specifications for the erection of the

building as required by the lease and of the rights and interest of the lessor under the lease and the ordinances; that the Phillips Co. had no valid claim for money or compensation from McKinlock; that there was no privity of contract between McKinlock and the Phillips Co. under the contract by virtue of which the sprinkler system was installed; that there was no conversion of the sprinkler system by McKinlock, who had no knowledge or notice of the attempted reservation by the Phillips Co. of title to the system, and that the attempted secret reservation of title thereto under a rental or conditional sales contract was a fraud on McKinlock. After adjudging the rights of other parties, the decree declared:

"That said George A. McKinlock is vested with the fee simple title to said real estate, building and improvements, free and clear of said lease and of the mortgage trust deeds on said leasehold estate, and any and all liens upon or attaching to said leasehold estate and that said lease and trust deeds be delivered up and cancelled by the clerk of this court and that all cross defendants to this cross-bill be barred of all right, title, interest, and right of redemption in and to said leasehold estate and said real estate, building and improvements and that cross complainant recover its costs."

The Phillips Co. contends that this decree is erroneous as to it; that its contract with the Wells-Jackson Corporation was valid, and that under that contract the title to the sprinkler system should have been declared to be in the Phillips Co.

The briefs of the parties seem to concede that prior to the enactment of the Uniform Sales Act this contract would have been held to be fraudulent and void as against McKinlock, the owner of the premises. They contend, however, that the former rule has been changed by sections 23–26 of the Sales Act, Cahill's St. ch. 121a, ¶¶ 26–29 (Smith-Hurd's Ill. Rev. Stats. 1933, ch. 121½, secs. 23–26.) Said section 23 provides

in substance that where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, *"unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell."*

The Phillips Co. contends that under this provision of the statute as construed in *Sherer-Gillett Co. v. Long,* 318 Ill. 432; *Dayton Scale Co. v. General Market House Co.,* 335 Ill. 342, the title to the sprinkler system remains in the Phillips Co., and that it is not precluded by its conduct from denying the right of the lessee to sell the same to McKinlock. The contract between the Phillips Co. and the Wells-Jackson Corporation provided that the sprinkler system should not become a fixture but should remain the property of the "lessor," who should have the right in case of default to take possession while the same was attached to the realty or not.

The controlling question in the case therefore is whether the Phillips Co. is by its conduct precluded from claiming this property. Neither of the parties cites any case which is precisely in point, but the facts we have recited and others which appear in the record preclude the Phillips Co., in the opinion of this court, from now claiming the property. The 99-year lease, it will be noted, was recorded on February 4, 1929, and the claimant here is therefore chargeable with notice of all its provisions. The lease provided for the wrecking of the old building and the erection of a new one to be used as a public garage. The parties knew, or are presumed to know, that the city ordinance then in force prohibited the use of any such garage unless it was equipped with a sprinkler system. The lease provided that there should be no liens of any kind against the premises for work or material, and that any lien

claimed should attach only to the leasehold estate. The lease further expressly provided that upon its termination all fixtures and improvements should belong to the lessor. The claimant here knew that the new building was to be a garage, knew of the provisions of the city ordinance, knew that the Wells-Jackson Corporation was under covenant to construct the building with a sprinkler system, free and clear of liens of any kind, and that all this was to be done so that the building could be occupied for use as a garage and in accordance with the city ordinance not later than December 31, 1931. The claimant also knew the provision of the lease that at the termination thereof the fixtures should belong to the lessor. The Phillips Co. installed its system with knowledge of these restrictions, and by delivering its goods to the Wells-Jackson Corporation enabled it to represent to McKinlock that the building covenants in the lease had been performed. No claim was made by the Phillips Co. upon the owner of the premises until after default had been made in the covenants and conditions of the lease by the Wells-Jackson Corporation. To now permit the Phillips Co. to assert its rights and thus enforce a secret lien against the property would, we hold—and as the decree finds—amount to a fraud upon McKinlock which will not be tolerated by a court of equity.

As this is the controlling question in the case, our decision and conclusion thereon make it unnecessary to discuss other points raised in the briefs. For the reasons indicated, the decree of the trial court is affirmed.

*Affirmed.*

O'CONNOR and McSURELY, JJ., concur.