PORTIA S. NAGEL, Plaintiff-Appellant, v. GERALD DENNEN AND COMPANY, Defendant-Appellee.

First District (2nd Division)    No. 1—93—1510

Opinion filed May 2, 1995.

Knight, Hoppe, Fanning & Knight, Ltd., of Des Plaines (Janella L. Barbrow, Colleen C. Coburn, and Joette S. Doran, of counsel), for appellant.

Stackler & Stackler, of Chicago (Barbara W. Stackler, John A. Holtaway, and Samuel M. Greenberg, of counsel), for appellee.

JUSTICE McCORMICK delivered the opinion of the court:

Plaintiff, *pro se,* brought an action against defendant for unpaid wages, vacation time and commissions in the circuit court of Cook County pursuant to the Illinois Wage Payment and Collection Act (Ill. Rev. Stat. 1991, ch. 48, par. 39m—11 (now 820 ILCS 115/11 (West

1992)))). Defendant subsequently presented, without notice to plaintiff, an "Emergency Motion." At the *ex parte* hearing on the motion, the trial court dismissed plaintiff's second amended complaint with prejudice and, on a later date, awarded defendant attorney fees and costs. Plaintiff's motion to reconsider was denied. On appeal, plaintiff contends that the trial court: (1) erred in hearing defendant's motion *ex parte* in the absence of notice to plaintiff; (2) erred in dismissing plaintiff's second amended complaint with prejudice; and (3) abused its discretion in awarding attorney fees and costs to defendant. We reverse the judgment of the trial court.

In March 1990, plaintiff, an accountant, terminated her employment with defendant after defendant requested she sign a noncompetition agreement as a condition to receiving a raise. In September 1990, plaintiff filed a claim for wages with the Illinois Department of Labor (Department). On April 22, 1991, the Department held a hearing on the claim. Defendant failed to appear at the hearing, and the Department issued a "Wage Payment Demand" in favor of plaintiff and against defendant for $4,018.11. Subsequently, defendant informed the Department that it had not received notice of the hearing and received a stay of the enforcement of the "Wage Payment Demand," pending the outcome of a hearing rescheduled for October 2, 1991.

In the interim, on August 26, 1991, plaintiff filed a *pro se* action in the circuit court alleging that she was due $5,842.69 in unpaid wages and commissions from defendant. Defendant moved to dismiss plaintiff's complaint pursuant to section 2—619(9) of the Illinois Code of Civil Procedure (Code) (Ill. Rev. Stat. 1991, ch. 110, par. 2—619(9) (now 735 ILCS 5/2—619(9) (West 1992))). Defendant contended that plaintiff's action improperly sought to enforce the wage payment demand, notwithstanding that the Department had stayed enforcement. Defendant also requested attorney fees pursuant to Supreme Court Rule 137. (134 Ill. 2d R. 137.) The trial court struck plaintiff's complaint with leave to amend and denied defendant's request for attorney fees.

Plaintiff filed an amended complaint, *pro se*, on November 19, 1991. Defendant moved to strike this complaint under section 2—615 of the Code based on plaintiff's failure to state a cause of action. (Ill. Rev. Stat. 1991, ch. 110, par. 2—615 (now 735 ILCS 5/2—615 (West 1992)).) The trial court granted the motion to strike, without prejudice, and gave plaintiff 21 days to file a second amended complaint.

Plaintiff filed a second amended complaint, *pro se*, on February 21, 1992. Defendant moved for summary judgment or, alternatively, requested that the trial court dismiss plaintiff's complaint with prej-

udice pursuant to section 2—619(7) of the Code (Ill. Rev. Stat. 1991, ch. 110, par. 2—619(7) (now 735 ILCS 5/2—619(7) (West 1992))), contending in part that the claim was barred by the Statute of Frauds (Ill. Rev. Stat. 1991, ch. 59, par. 1 *et seq.*). The trial court denied the motion and ordered defendant to answer or otherwise plead.

On September 8, 1992, defendant presented an "emergency" motion seeking dismissal of the second amended complaint, a finding of fraud, Rule 137 sanctions and to compel disclosure. Defendant contended that the *pro se* plaintiff received improper assistance from an attorney in the preparation of pleadings. The trial court heard defendant's "emergency" motion *ex parte*, without notice to plaintiff. The trial court dismissed plaintiff's second amended complaint with prejudice and granted defendant the right to an award of attorney fees and costs. On April 1, 1993, the trial court awarded defendant attorney fees and costs in the amount of $12,534.40. This appeal followed.

We first observe that there is no written notice of defendant's "emergency" motion in the record. Nor is there any reference to a written notice of motion in the report of proceedings held on September 8, 1992. The only references to notice of the motion are representations by the parties in their briefs. Defendant represents that on September 7, 1992, its counsel attempted to fax a copy of the "emergency" motion to plaintiff's home and that plaintiff's fax machine purportedly ran out of paper and could not accept the entire transmission. Defendant's counsel also stated that she telephoned plaintiff about the motion and the difficulty in completing the fax transmission and spoke with a person who identified herself as plaintiff's daughter. Plaintiff represents that September 7, 1992, was the Labor Day holiday, that she was out of town on that date and that defendant had been informed that she would be out of town until September 12.

The circuit court of Cook County rules provide generally that a written notice of motion must be mailed five court days preceding the date of hearing on the motion, to effectuate service by mail, or, for personal service, two court days prior to the date of the hearing. (Cook County Cir. Ct. Rules 2.1(c)(i).) "Emergency motions and motions which by law may be made ex parte may, in the discretion of the court, be heard without giving prior notice and without calling the motion for hearing." (Cook County Cir. Ct. Rule 2.2.) The circuit court rules do not define the word "emergency." However, Illinois courts give undefined terms their ordinary and popularly understood meanings. (*Opyt's Amoco, Inc. v. Village of South Holland* (1992), 149 Ill. 2d 265, 277, 595 N.E.2d 1060.) "Emergency" has been defined as:

"A sudden unexpected happening; an unforeseen occurrence or condition; perplexing contingency or complication of circumstances; a sudden or unexpected occasion for action; exigency; pressing necessity. Emergency is an unforeseen combination of circumstances that calls for immediate action without time for full deliberation." Black's Law Dictionary 522-23 (6th ed. 1990). See also *Opyt's Amoco*, 149 Ill. 2d at 277-78.

In the case at bar, plaintiff argues that Rule 2.2 of the circuit court of Cook County, providing for emergency motions, is inapplicable because no emergency existed. The parties have not cited to, nor has our research revealed, cases addressing the issues of what fact situation, under Rule 2.2., constitutes an emergency, whether some notice should have been given and, if notice was given, whether it was adequate in view of the stated facts proffered in support of the emergency motion. However, we find instructive those cases involving the issuance of a temporary restraining order or injunction.

It is well settled that "a [temporary restraining order] may be obtained without notice to the adverse party *only* if it 'clearly appears from specific facts shown by affidavit or \*\*\* complaint that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing held thereon.'" (Emphasis added.) *Hirschauer v. Chicago Sun-Times* (1989), 192 Ill. App. 3d 193, 201, 548 N.E.2d 630, quoting Ill. Rev. Stat. 1987, ch. 110, par. 11—101, *appeal dismissed* (1990), 131 Ill. 2d 559, 553 N.E.2d 396 (temporary restraining order precluding the defendant newspaper from ceasing to sell papers to the plaintiff distributor was improperly issued without notice to the defendant in the absence of a showing of irreparable harm to the plaintiff before notice could have been given); see also *American Warehousing Services, Inc. v. Weitzman* (1988), 169 Ill. App. 3d 708, 715, 533 N.E.2d 366 (a 30-minute telephone notice to the defendant prior to a hearing on the plaintiff's request for a temporary restraining order was adequate where the plaintiff was faced with imminent disruption of its business operations and the defendant had an opportunity to notify his attorney and request his appearance at the hearing on the motion).

"Injunctive relief without notice is an extraordinary remedy appropriate only under the most extreme and urgent circumstances. [Citation.] The critical inquiry in all cases is whether, during the period it takes to give notice, the opponent will take such measures as to destroy the substance of the litigation or otherwise obstruct the court from dealing effectively with the issues [citation], and whether proper notice might have averted litigation by 'immediately test[ing]' the validity of injunctive relief." *Hirschauer*, 192 Ill. App. 3d at 201;

see also *Streamwood Home Builders, Inc. v. Brolin* (1960), 25 Ill. App. 2d 39, 47-48, 165 N.E.2d 531 (an injunction issued without notice to the defendants was not improper where the defendants were individuals, rather than an organized group, not reachable at any central location, had no known attorney, notice at the time given would have been futile, and the plaintiff would suffer irreparable injury as a result of the defendants' threatened, repeated conduct of preventing the plaintiff's sale of homes by parading around the sales area, invading the plaintiff's office and model homes, and by interrupting conversations between salesmen and prospective purchasers); *Sangamo Electric Co. v. United Automobile, Aerospace & Agricultural Implement Workers of America International Union* (1976), 42 Ill. App. 3d 563, 564, 356 N.E.2d 389 (critical question to be asked in determining whether to issue an injunction was, in the minutes or hours necessary for the defendant to appear, would the defendant do that which would seriously affect the issues in dispute and, where no facts were alleged that events on a picket line would be much changed in the few hours it would take to informally notify the defendants of the plaintiff's request for an injunction, issuance of an injunction without notice to the defendants was improper).

In those situations involving a temporary restraining order or an injunction, the requirement, that the moving party demonstrate that it will suffer irreparable harm before notice can be given and a hearing held on the merits, comports with the ordinary meaning of "emergency." It is also clear that even in emergency situations, "[s]ome notice, however informal, is greatly to be preferred to none at all." *Sangamo Electric*, 42 Ill. App. 3d at 565; *Skarpinski v. Veterans of Foreign Wars* (1951), 343 Ill. App. 271, 275, 98 N.E.2d 858; see also *Hirschauer*, 192 Ill. App. 3d at 201; *American Warehousing*, 169 Ill. App. 3d at 715.

Here, defendant contends that the emergency existed as a result of discovering in plaintiff's deposition taken on September 3, 1992, that plaintiff, who was purportedly proceeding *pro se*, was in fact being assisted by an attorney not of record. This fact, defendant argues, coupled with the need to stop the flow of attorney fees incurred by defendant, created circumstances that warranted the presentation of an "emergency" motion without due notice to plaintiff.

■ We find defendant's argument without merit. Defendant's purported knowledge that an attorney, not of record, was assisting the *pro se* plaintiff, coupled with defendant's need to stop incurring attorney fees, did not create an emergency that negated the requirement that defendant give due notice of its motion to plaintiff. While it is obvious that the degree of irreparable harm will vary, clearly

there is no such variance in demonstrating immediacy of the occurrence of that harm; the immediate harm either exists or does not exist. What immediate, irreparable harm would be visited upon defendant by the passage of five days (service by mail) or two days (personal service), as required to give plaintiff due notice? Is the mere fact that defendant's motion was labelled an "emergency" sufficient to satisfy the requirement that an emergency exist? Clearly, the answer is "No" in light of the specific meaning of "emergency" and the cases cited herein, requiring specifically stated facts "that *immediate* and *irreparable* injury, loss, or damage will result to the applicant before notice can be served." (Emphasis added.) (*Hirschauer*, 192 Ill. App. 3d at 201.) In this case, not one word was uttered during the hearing to support a finding that an emergency existed.

We further find that the written motion itself belies the argument that an emergency existed. The written motion states that at the deposition of one of defendant's officers on August 21, 1992, plaintiff admitted that she was assisted by an attorney in the prosecution of her case. There is nothing in the record to explain why defendant did not file an emergency motion at that time, and instead waited until after it took plaintiff's deposition on September 3, 1992, when plaintiff again allegedly admitted that she had been assisted by an attorney. Thus, in view of an alleged emergency, it took defendant 18 days to present the "emergency" motion in court. Under the facts and circumstances of the case at bar, there was no emergency and the trial court should not have proceeded in the absence of due notice to plaintiff pursuant to Rule 2.1 of the circuit court. (Cook County Cir. Ct. Rule 2.1.; see also *Farrar v. Jacobazzi* (1993), 245 Ill. App. 3d 26, 31, 614 N.E.2d 259 (the plaintiff's motion for voluntary dismissal was improperly allowed because the plaintiff did not give timely notice pursuant to circuit court of Cook County Rules 2.1(a), (c)(i), (d)); *Vaughn v. Northwestern Memorial Hospital* (1991), 210 Ill. App. 3d 253, 257-59, 569 N.E.2d 77, *appeal denied* (1991), 139 Ill. 2d 605, 575 N.E.2d 924 (the plaintiff's motion for voluntary dismissal was properly denied where the plaintiff did not give timely notice pursuant to circuit court of Cook County Rules 2.1(a), (c)(i)).) Hence, the trial court's orders of September 8, 1992, and April 1, 1993, are vacated.

We address plaintiff's remaining arguments concerning dismissal of her second amended complaint and the award of attorney fees and costs because they may be viable issues before the trial court on remand. (*Jones v. Board of Fire & Police Commissioners* (1990), 204 Ill. App. 3d 1004, 1010, 562 N.E.2d 1175, *appeal denied* (1991), 137 Ill. 2d 665, 571 N.E.2d 149 (resolution of an issue, which was unneces-

sary to resolve the case, was warranted because of reviewing court's erroneous conclusion on the same issue); *Parvin v. Sill* (1985), 138 Ill. App. 3d 325, 329, 486 N.E.2d 262 (court's observations on some issues, which might arise on retrial, were in order).) Plaintiff argues that the trial court erred in dismissing her second amended complaint based upon its erroneous conclusion that plaintiff must first obtain an order in her favor from the Department of Labor. The powers and duties of the Department under section 11 of the Wage Payment and Collection Act (Act) are as follows:

"It shall be the duty of the Department of Labor to inquire diligently for any violations of this Act, and to institute the actions for penalties herein provided, and to enforce generally the provisions of this Act.

The department shall have the following powers:

(a) To investigate and attempt equitably to adjust controversies between employees and employers in respect of wage claims arising under this Act ***.

(b) To take assignments of wage claims in the name of the Director of Labor and his or her successors in office and prosecute actions for the collection of wages for persons financially unable to prosecute such claims when in the judgment of the department such claims are valid and enforceable in the courts. ***

(c) To make complaint in any court of competent jurisdiction of violations of this Act.

Nothing herein shall be construed to prevent any employee from making complaint or prosecuting his or her own claim for wages.

Nothing herein shall be construed to limit the authority of the State's attorney of any county to prosecute actions for violation of this Act or to enforce the provisions thereof independently and without specific direction of the Department of Labor." (Ill. Rev. Stat. 1991, ch. 48, par. 39m—11 (now 820 ILCS 115/11 (West 1992)).)

Clearly, section 11(c) of the Act allows a private cause of action by an employee. (*Rekhi v. Wildwood Industries, Inc.* (C.D. Ill. 1992), 816 F. Supp. 1308, 1310; *Rekhi v. Wildwood Enterprises, Inc.* (1991), 219 Ill. App. 3d 312, 316, 579 N.E.2d 1189; *Miller v. J.M. Jones Co.* (1990), 198 Ill. App. 3d 151, 154, 555 N.E.2d 820.) Further, we find nothing in the Act requiring the Department to make a determination of an employer's liability for wages before a claimant may bring an action in the circuit court.

Defendant maintains, however, that *Miller* and *Rekhi* must be read to mean that an "initial" determination of liability from the Department is necessary before a claimant can bring an action in the

circuit court under the Act. Defendant bases this argument on the *Rekhi* court's statements:

"'A reasonable interpretation of the Act requires a finding that while certain penalties and interest provisions may run from the Department's *initial determination of liability*, actual liability, if contested, must be determined by the trial court. The *initial determination of the Director of Labor* cannot be used to establish liability in the trial court.' [Citation.] The *Miller* decision makes it abundantly clear that the Department's proceedings pursuant to the Act are not judicial in nature and, thus, have no preclusive effect in subsequent civil or criminal litigation." (Emphasis added.) (*Rekhi*, 219 Ill. App. 3d at 316.)

More specifically, defendant argues that although *Rekhi* and *Miller* hold that the initial determination by the Department is not binding in subsequent civil or criminal litigation, these cases do not hold that the initial determination by the Department is not required.

■ We find defendant's strained "argument" without merit. As stated above, the Act simply does not contain any provision requiring that the Department make an initial determination of liability before a claimant may file an action in the circuit court. In fact, the Act does provide that nothing in the Act is to be construed "to prevent any employee from making complaint or prosecuting his or her own claim for wages." (Ill. Rev. Stat. 1991, ch. 48, par. 39m—11(c) (now 820 ILCS 115/11 (West 1992)).) Moreover, as the *Miller* court stated:

"[T]he power to take assignments of wage claims and prosecute actions for collection of wages (section 11(b)) *clearly indicates the absence of judicial or administrative determination powers. Section 11(c) says nothing more than that the claimant, as well as the Department, can proceed in the trial courts.*" (Emphasis added.) (*Miller*, 198 Ill. App. 3d at 154.)

Clearly, plaintiff was not required to obtain an order, or as defendant argues an initial determination of liability, from the Department, and the trial court erred in dismissing her complaint on that basis.

■ We also reject defendant's argument that plaintiff was required to exhaust administrative remedies prior to commencing an action in the circuit court. The language of the Act makes it clear that the Department's duties are to "investigate and attempt equitably to adjust controversies." (820 ILCS 115/11(a) (West 1992).) Thus, proceedings before the Department are "investigatory in nature [and] not subject to administrative review." (*Rekhi*, 219 Ill. App. 3d at 314.) Since the Act does not grant the Department judicial or administrative powers, plaintiff had no administrative remedies to exhaust.

We briefly note that the cases relied upon by defendant, relative

to his exhaustion of administrative remedies argument, are factually distinguishable from the case at bar. *International Harvester Co. v. Bowling* (1979), 72 Ill. App. 3d 910, 391 N.E.2d 168, and *People ex rel. Olin Corp. v. Department of Labor* (1981), 95 Ill. App. 3d 1108, 420 N.E.2d 1043, do not involve the Wage Payment and Collection Act. They both involve claims for unemployment compensation benefits under the Unemployment Insurance Act (Ill. Rev. Stat. 1991, ch. 48, pars. 300 through 820). The Unemployment Insurance Act has a far different statutory scheme than the Wage Payment and Collection Act. Accordingly, defendant's reliance on *International Harvester*, in support of his argument that a final agency decision of the Department of Labor is a prerequisite to filing suit in the circuit court, and his reliance on *Olin* for the proposition that an initial determination by the Department is required before commencing suit in the circuit court, is misplaced. Lastly, while *Metropolitan Distributors, Inc. v. Illinois Department of Labor* (1983), 114 Ill. App. 3d 1090, 449 N.E.2d 1000, does deal with a claim for severance pay under the Wage Payment and Collection Act, it does not address the issues in the case at bar. In *Metropolitan*, the appellate court merely stated that the question of whether an agency had jurisdiction to hear a claim, where jurisdiction is an issue, should first be made by the agency itself. (*Metropolitan*, 114 Ill. App. 3d at 1092.) The court did not state, as defendant argues, and defendant fails to direct this court's attention to any authority which so holds, that once the Department exercises jurisdiction over a claim, the claimant's right to institute an action in the circuit court is foreclosed. No fair reading of the court's opinion in *Metropolitan* can be understood to curtail the private right of action allowed a claimant under the Act.

We also agree with plaintiff that the trial court abused its discretion in awarding defendant attorney fees and costs as a sanction under Supreme Court Rule 137. (134 Ill. 2d R. 137.) Defendant argues that the court never entered Rule 137 sanctions against plaintiff and that the trial court's award of fees was proper because it was entered pursuant to an evidentiary hearing. Only a herculean leap of faith would allow us to find merit or a rational basis in defendant's argument.

In Illinois, it is well settled that "the ordinary expenses and burdens of litigation are not allowable to the successful party in the absence of a statute, *** or stipulation specially authorizing the allowance thereof." (*Ritter v. Ritter* (1943), 381 Ill. 549, 553, 46 N.E.2d 41; *Kerns v. Engelke* (1979), 76 Ill. 2d 154, 166, 390 N.E.2d 859; *Sanelli v. Glenview State Bank* (1984), 126 Ill. App. 3d 411, 415, 466 N.E.2d 1119.) The Wage Payment and Collection Act does not authorize an

award of attorney fees to the prevailing party. (820 ILCS 115/1 *et seq.* (West 1992).) However, Rule 137 authorizes an award for reasonable attorney fees as a sanction where a party files pleadings for an improper purpose, such as harassment or delay. 134 Ill. 2d R. 137.

At the *ex parte* hearing on defendant's "Emergency Motion for Order Compelling Disclosure and for Rule 137 Sanctions," the following discussion took place between the court and defendant's counsel:

> "THE COURT: The second amended complaint or whatever that's still allegedly here is dismissed with prejudice. That's one.
>
> MS. GOREN: Okay.
>
> THE COURT: Two, there's an order for whatever costs and fees have been expended. Now, I've got to clarify this. Was this filed pro se coffer [pauper] or were pro se filing fees paid?
>
> MS. STACKLER: Pro se.
>
> THE COURT: Coffer [pauper]?
>
> MS. STACKLER: No, pro se. This litigant has represented herself pro se throughout these proceedings.
>
> THE COURT: Number two is all fees and costs expended by whatever parties defending it are granted.
>
> MS. GOREN: As against whom?
>
> THE COURT: As against—I can't go against the other law firm because they're not a party to the action, so it's only as to Nagel, okay, unless you bring an action against them."

Defendant's contention that the trial court never awarded attorney fees as Rule 137 sanctions against plaintiff is contrary to the record. We first note the obvious, *i.e.*, that defendant's motion is entitled, in part, "Emergency Motion *** for Rule 137 Sanctions." Unlike defendant's mischaracterization of its motion as an emergency, the same cannot be said of defendant's intention to seek sanctions pursuant to Rule 137. Additionally, subparagraph D of defendant's emergency motion requested that the trial court "[e]nter an order requiring *** [plaintiff and the attorneys who allegedly assisted her in the case] to pay to *** [defendant] *all* of their reasonable costs and attorneys' fees *** in connection with the defense of *** [plaintiff's suit], pursuant to Illinois Supreme Court Rule 137." (Emphasis in original.) Moreover, the logic of defendant's position is inherently flawed. Since the Act does not authorize the award of attorney fees and since, according to defendant, attorney fees were not awarded as a sanction under Rule 137, then we must conclude that the trial court had no basis whatsoever to award defendant attorney fees in this case. Defendant's position is disingenuous and untenable.

■ The record clearly reveals that the trial court sanctioned plaintiff on motion of defendant pursuant to Rule 137. The trial court erroneously believed that an order from the Department was required

prior to an action in the circuit court. Because plaintiff had not obtained an order, the trial court believed her case to be "frivolous" and without a legal basis. A trial court's decision to award attorney fees pursuant to Rule 137 will not be overturned absent an abuse of discretion. (*In re Marriage of Pitulla* (1993), 256 Ill. App. 3d 84, 90, 628 N.E.2d 563, *appeal denied* (1994), 155 Ill. 2d 575, 633 N.E.2d 14.) However, after reviewing the record, we believe that the trial court awarded attorney fees and costs to defendant based on erroneous conclusions of law. In doing so, the trial court abused its discretion.

Reversed and remanded.

HARTMAN and DiVITO, JJ., concur.